UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT PAUL MCGREEVY,              17-CV-01341-MJR

                                                        DECISION AND ORDER

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

                Defendant.
_____

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 6).

        Plaintiff Robert Paul McGreevy ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is denied and defendant's motion (Dkt. No. 13) is granted.

## BACKGROUND

        Plaintiff filed an application for DIB on February 25, 2014 alleging disability since November 1, 2012 due to chronic neck pain, inability to turn his neck to the side, steel plates in his left foot and leg, walking with a limp, difficulty walking for more than an hour,

---

[1] The Clerk of Court is directed to amend the caption accordingly.

a head injury, sleep apnea, and depression.[2] (*See* Tr. 229-38, 265-73).[3] Plaintiff's disability benefits application was initially denied on May 28, 2014. (Tr. 141-55). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Jack McCarthy on June 14, 2016. (Tr. 84-123). ALJ McCarthy heard testimony from plaintiff, who was represented by counsel, and from Vocational Expert Jennifer S. LaRue. (*Id.*). Also during the hearing, the ALJ heard testimony from impartial medical experts Darius Ghazi, M.D., an orthopedic surgeon, and Thomas H. England, Ph.D., a psychologist. (*Id.*). At the hearing, plaintiff requested a closed period of disability, from October 21, 2012, when hardware was removed from his foot following his 2010 fracture, to March 1, 2014, when he started looking for work. (Tr. 10, 87). On September 20, 2016, ALJ McCarthy issued a decision that plaintiff was not disabled under the Act from October 31, 2012 through March 1, 2014. (Tr. 10-23). Plaintiff timely sought review of the decision by the Appeals Council. (Tr. 226). Plaintiff's request for review of the decision was denied by the Appeals Council on October 30, 2017. (Tr. 1-6). The ALJ's September 20, 2016 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed.

Born on November 28, 1968, plaintiff was 43 years old on the alleged disability onset date. (Tr. 18, 273). He speaks English and has a high school education. (Tr. 18). Plaintiff served in the United States Navy from 1987 through 1991. (Tr. 103). After that, he worked as a sous chef, executive chef, assistant chef, and kitchen manager in various Buffalo restaurants until 2012. (Tr. 118-19, 239-54, 274). Plaintiff indicates that he

---

[2] Plaintiff also filed an application for SSI on February 27, 2014 with a protective filing date of February 25, 2014.
[3] References to "Tr." are to the administrative record in this case.

2

stopped working in 2012 but resumed work again as a chef in April of 2014. (Tr. 86, 103). Plaintiff is currently employed full-time as an assistant chef and his job duties include assisting the banquet chef in preparing meals for large functions. (Tr. 103). His earnings record demonstrates that he was engaged in substantial gainful activity with earnings from 1992 through 2012 and again in 2014 and 2015. (Tr. 269). Thus, the issue before this Court is whether there was substantial evidence to support the ALJ's decision that plaintiff was not under a disability, as defined by the Act, between October 31, 2012 and March 1, 2014.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

4

whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ first found that plaintiff met the insured status requirements of the Act through December 31, 2019. (Tr. 10, 12). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity from October 31, 2012 to March 1, 2014, the alleged period of disability. (*Id.*). At step two, the ALJ found that, during the period in question, plaintiff had severe impairments consisting of: (1) status post intraarticular distal tibia fracture with fibula fracture; (2) status post removal of left tibia infection and removal of hardware; and (3) degenerative disc disease of the cervical spine.[4] (Tr. 12-15). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 15). Before proceeding to step four, the ALJ assessed plaintiff's RFC from October 31, 2012 to March 1, 2014 as follows:

> [T]he [plaintiff] had the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), including the ability to lift, carry, push or pull up to 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk 6 hours in an 8-hour workday. He had no limitations on sitting. He needed to avoid climbing, kneeling, crouching and crawling. He could frequently balance on flat surfaces. He needed to avoid unprotected heights and reaching overhead.

(Tr. 15-18).

Proceeding to step four, the ALJ concluded, based upon the testimony of VE LaRue, that plaintiff was unable to perform any past relevant work during the alleged

---

[4] Also at step two, the AJJ noted that he was giving no weight to Dr. Ghazi's hearing testimony that plaintiff's impairment of the lower left leg involving the ankle joint and a portion of the foot met Listing 1.02A (20 CFR 404 Appendix 1) as of October 31, 2012. (Tr. 13-14). The ALJ further found, based on the hearing testimony of Dr. England and plaintiff's lack of mental health treatment during the pertinent period, that plaintiff's medically determinable mental impairment of depression did not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities and therefore was non-severe. (Tr. 14).

7

period of disability. (Tr. 18). Proceeding to step five, and after considering testimony from VE LaRue in addition to plaintiff's age, work experience and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could have performed during the time period in question, such as charge account clerk, order clerk or document preparer.[5] (Tr. 18-19). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from October 31, 2012 to March 1, 2014. (Tr. 19).

    IV.   *Plaintiff's Challenges*

Plaintiff argues that remand is required because the ALJ dismissed the opinion of Dr. Ghazi, the only medical opinion in the record regarding plaintiff's physical capabilities. (*See* Dkt. No. 11-1 (Plaintiff's Memo of Law)). Therefore, plaintiff contends that the RFC was not supported by substantial evidence. (*Id.*). During the hearing, the ALJ received testimony from medical expert Darius Ghazi, M.D., an orthopedic surgeon. Dr. Ghazi, who never examined or treated plaintiff, testified based upon his review of plaintiff's medical records. Dr. Ghazi noted that in August of 2010 plaintiff sustained an injury to his left leg involving his ankle joints and a portion of his left foot. (Tr. 89). He further noted that plaintiff developed an infection in the hardware after surgery, which ultimately healed. (*Id.*). Dr. Ghazi testified that he was sure the fracture was arthritic and might need surgery in the future, including either replacement of the ankle joint or fusion. (Tr. 89, 92). Dr. Ghazi further opined that, based on this injury, plaintiff had an impairment that met Section 1.02(A) of 20 CFR 404, Subpt. P, App. 1 (the Listings) as of October 31,

---

[5] Also at step five, the ALJ noted that the jobs cited by the VE could be performed even if plaintiff were limited to occasional balance on flat surfaces and could stand and/or walk only 2 of 8 hours, which is more restrictive than the RFC. (Tr. 19). Thus, even if plaintiff were limited to sedentary work, he would not have been disabled for 12 months during the requested closed period. (*Id.*).

2012.[6] (Tr. 89). The ALJ gave little weight to Dr. Ghazi's opinion because his findings were inconsistent with both plaintiff's medical records and other evidence in the record. (Tr. 17).

The Court finds that the ALJ did not err in discounting the opinion of Dr. Ghazi. As noted above, Dr. Ghazi is not plaintiff's treating physician. Therefore, his opinion is not entitled to controlling weigh. *See* 20 C.F.R. §§404.1527(c) and 404.1502. If a medical opinion is not entitled to controlling weight, an ALJ is to consider several factors in deciding how much weight to give the opinion, including the nature of the medical source's relationship to the plaintiff, the opinion's supportability and consistency, the source's specialization, and any other factor that tends to support or contradict the opinion. *See* 20 C.F.R. §404.1527(c)(1)-(6). Here, the ALJ thoroughly considered these factors before rejecting Dr. Ghazi's findings. The ALJ noted that Dr. Ghazi is an orthopedic surgeon and medical expert who testified based upon his review of the medical evidence; not based upon a treating relationship with or examination of plaintiff. He noted that Dr. Ghazi appeared to miss medical evidence, including evidence of plaintiff's ability to ambulate between October 31, 2012 and March 1, 2014. Specifically, during the hearing, the ALJ explained that in order to have an impairment that meets Section 1.02(A) of the Listings, an individual must have an inability to ambulate effectively. (Tr. 91-92). The ALJ then asked Dr. Ghazi if there is any evidence in the medical records that plaintiff was unable to ambulate effectively between October of 2012 and March of 2014. (Tr. 92). Dr. Ghazi

---

[6] Listing 1.02(A) provides, in pertinent part, that a claimant is *per se* disabled if he or she has "major dysfunction of a joint(s) (due to any cause) [c]haracterized by gross anatomical deformity…and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints…with…[i]nvolvement of one major peripheral weight bearing joint…resulting in inability to ambulate affectively." 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 1.02. *See also* 20 C.F.R. §404.1520(d).

9

acknowledged that he "didn't see any." (*Id.*). Further, as indicated by the ALJ in the decision, the medical evidence indeed reflects that plaintiff *was able* to ambulate effectively between October of 2012 and March of 2014. (Tr. 16). In November of 2012, a physician assistant from the Veteran's Administration ("VA") opined that plaintiff could return to full weight bearing on his left leg in six weeks, that he had full range of motion, 5/5 strength, and gross stability and neurological functioning in his left leg. (Tr. 422-23). In December of 2012, plaintiff was again found to have full range of motion, 5/5 strength, and gross stability and neurological functioning in his left leg. (Tr. 418-19). In March of 2013, plaintiff's ambulation was described as "independent with a steady gait." (Tr. 409). The ALJ then went on to list the other ways in which Dr. Ghazi's opinion was contradicted by the record as a whole. Indeed, plaintiff reported both looking for work and working during the time period at issue. (Tr. 408-409, 420, 428). Thus, Dr. Ghazi's finding of a severe impairment was inconsistent with plaintiff's work during the alleged period of disability. (Tr. 17). Also in October of 2013, plaintiff sustained an injury when he fell off a ladder while retrieving shingles from a roof. (Tr. 395). Thus, plaintiff's reported activities during the alleged period of disability indicate that he was capable of both ambulation and significant physical exertion. Finally, plaintiff testified that doctors prescribed orthopedic insoles which helped him to bear weight on his leg and that medication helped alleviate his pain. (Tr. 111, 114). For these reasons, the Court finds that the ALJ did not err when he gave little weight to the opinion of Dr. Ghazi.

The Court further finds that, contrary to plaintiff's argument, the RFC is supported by substantial evidence. Generally, when assessing a plaintiff's RFC, "[a]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis

10

without substantial medical evidence to support his opinion." *Goldthrite v. Astrue*, 535 F. Supp. 2d. 329, 339 (W.D.N.Y. 2008). However, when the medical evidence shows only minor impairments, "an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Wilson v. Colvin*, 13-CV-6286, 2015 WL 1003933, *21 (W.D.N.Y. Mar. 6, 2015). *See also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). As explained below, the ALJ properly considered the record as a whole, including all testimony, medical records and treatment notes, when he determined that, between October 31, 2012 and March 1, 2014, plaintiff could perform light work with some additional restrictions as outlined in the RFC. The Court finds substantial evidence in the record exists to support these findings.

Plaintiff sustained left lower leg fractures in a motorcycle accident on August 4, 2010. (Tr. 325-26). He underwent surgery to repair the fracture on August 6, 2010, including closed reduction manipulation of a distal tibial-fibular fracture with application of a multiplanar external fixation system and intraoperative fluoroscopy. (Tr. 331-33). Plaintiff had another surgery on August 14, 2010, involving open reduction and internal fixation of his intra-articular distal tibia fracture, removal of external fixator, open treatment of a right calcaneus fracture, open reduction and internal fixation of a calcaneocuboid joint dislocation, and intraoperative fluoroscopy. (Tr. 334-37). Plaintiff regularly saw Christopher Ritter, M.D. for follow-up care after his surgeries. In April of 2011, plaintiff's x-rays showed healed tibia and fibula fractures and stable calcaneocuboid joint. (Tr. 347,

462). In August of 2011, plaintiff's x-rays reflected a healed and remodeled tibia and fibula fracture. (Tr. 310, 345). Dr. Ritter recommended hardware removal. (Tr. 310-11). In August of 2012, x-rays showed healed fracture deformities in the left fibula and tibia and intact hardware. (Tr. 444-45).

On October 31, 2012, the start of the alleged period of disability, Elizabeth Nolan, M.D. diagnosed plaintiff with a left tibia hardware infection. (Tr. 435-36). Plaintiff underwent surgery and a wound VAC to treat the infection. (*Id.*). On November 8, 2012, plaintiff saw Douglas Schurr, a physician assistant with the VA. (Tr. 430). Schurr found that plaintiff had an open wound without signs of infection, mild wound tenderness, full range of motion, 5/5 strength, and grossly intact functioning in his left leg. (Tr. 430-31). He diagnosed left tibia hardware removal and placement of a wound VAC. (Tr. 431). Schurr indicated that plaintiff could return to light duty work and recommended sedentary or desk work. (Tr. 429). He noted that plaintiff should avoid prolonged standing when possible and not climb, and could "progress to expected job duties over the next four weeks." (Tr. 429-30). On November 15, 2012, Schurr found that plaintiff had a wound VAC in place without signs of infection. (Tr. 422). He again noted that plaintiff had full range of motion, 5/5 strength, and gross stability and neurological functioning in his left leg. (Tr. 422). He opined that plaintiff could fully weight bear on his left ankle in six weeks. (Tr. 423). Plaintiff saw Dr. Nolan again on November 29, 2012. (Tr. 420). Plaintiff reported no complaints, that he was doing well with his wound VAC and that he was looking for work. (Tr. 420). Dr. Nolan diagnosed plaintiff's status as post-right tibia hardware removal for infection with well-healing wound. (Tr. 420).

12

Plaintiff saw another physician assistant with the VA on December 18, 2012. (Tr. 418-19). Plaintiff was again found to have no signs of infection, full range of motion, 5/5 strength, and gross stability and neurological functioning in his left leg. (*Id.*). That same day, Dr. Jonathan Graff of the VA found that plaintiff had a nicely healing wound but might need "an element of compression" probably forever. (Tr. 417-18). Plaintiff returned to the VA in March of 2013. (Tr. 407-09). Plaintiff's ambulation status was described as "independent with a steady gait." (Tr. 409). He was found to have a normal gait, normal muscle strength and tone, but limited range of motion in his spine. (Tr. 411). At that time, plaintiff reported to his treatment provider that he was recently fired from a job and had a job interview prior to his medical appointment that day. (Tr. 407-08).

On October 6, 2013, plaintiff visited the emergency room at the VA after falling off a ladder while retrieving shingles from a roof. (Tr. 395-05, 440-41). He complained of right hand swelling and rib pain, and was later diagnosed fractures at the base of his thumb. (Tr. 395, 437-38). Plaintiff later underwent hand surgery to repair the fracture. (Tr. 390). Plaintiff saw Dr. Nolan on November 15, 2013 for his left ankle impairment. (Tr. 378). Plaintiff reported that he was "doing well" but that he still sometimes experienced soreness and swelling. (Tr. 378). Dr. Nolan indicated that he could not work as a chef because of his inability to stand for long periods of time. (Tr. 378).

At an appointment with the VA in August of 2014, approximately four to five months after the close of alleged disability period, plaintiff indicated that he was working as a chef at a casino. (Tr. 545). His ambulation status was described as "[i]ndependent with steady gait, [n]o assistance needed." (Tr. 546-47). Plaintiff was found to have normal gait and muscle strength and no neurological deficits, but some neck and left foot pain. (Tr. 548).

13

The VA provider recommended orthopedic or prosthetic devices to reduce swelling and support plaintiff's left ankle and arches. (Tr. 536). An x-ray of plaintiff's left foot in September of 2014 showed no acute fracture or dislocation. (Tr. 482).

In sum, the medical evidence from October of 2012 to March of 2014 demonstrates that plaintiff was able to perform light work with some additional restrictions as outlined by the RFC. X-rays demonstrated that his left ankle fracture healed after the August 2010 surgeries. While he sustained an infection from the hardware in 2012, the infection responded well to treatment and healed. During the alleged period of disability, plaintiff was able to ambulate and found to have a steady gait. He was also found to have full range of motion and full strength as well as stability and neurological functioning in his left leg. Treatment providers noted that he was capable of light duty work provided he avoided prolonged standing and climbing if possible. Further, the record shows that plaintiff reported both working and actively looking for work during the alleged disability period. Moreover, plaintiff engaged in other physically demanding activities during this time. His fall from a ladder while retrieving shingles in 2013 shows that he was performing medium to heavy work during the period at issue. Indeed, plaintiff returned to full-time work as a chef the month after the alleged period of disability ended, an occupation which requires greater physical exertion than light duty work. Plaintiff received little treatment for his leg between March of 2013 and October of 2013, which indicates that the wound was not causing him problems. Finally, plaintiff testified that he responded well to his treatment, which included orthotics and medication.

For all of these reasons, the Court finds that the RFC was supported by substantial evidence. *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5 (2d Cir. 2017) (because

the ALJ based her RFC determination on the treating physician's years worth of treatment notes, it was not necessary for the ALJ to seek additional medical information regarding claimant's RFC); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (affirming ALJ's RFC determination based on extensive medical record despite the fact that the record did not include formal opinions as to claimant's RFC).

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: June 10, 2019
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge